No. 08-551C
(Judge Bruggink)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(Bid Protest)**

KLINGE CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant,

and

SEA BOX, INC.

Defendant-Intervenor.

DEFENDANT'S REPLY TO PLAINTIFF'S COMPLAINT
AND MEMORANDUM OF POINTS AND AUTHORITIES

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

KIRK MANHARDT
Assistant Director

CHRISTOPHER L. KRAFCHEK
Trial Attorney
Civil Division,
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-0041 (Phone)
(202) 514-8624 (Facsimile)

Attorneys for Defendant

Of Counsel:
BRENT CURTIS
Associate Counsel
Marine Corps Systems Command
2200 Lester Street
Quantico, Virgina 22134-6050

September 3, 2008

**TABLE OF CONTENTS**

STATEMENT OF THE ISSUES .......... 1

STATEMENT OF THE CASE .......... 2

COUNTER STATEMENT OF FACTS .......... 2

ARGUMENT .......... 2

I. Plaintiff Lacks Standing To Challenge A Procurement On The General Services Administration Federal Supply Schedule .......... 3

II. The Agency's Decision To Utilize The General Service Administration Federal Supply Schedule Was Rationale Based Upon The Circumstances And In Accordance With Applicable Law And Regulation .......... 4

A. During Case No. 08-134, It Was Reasonable For The Agency To Have Concerns Regarding Klinge's Compliance With The Trade Agreements Act of 1979 For Contract Line Item 0003 .......... 5

B. The Agency Reasonably Exercised Its Discretion And Concluded That Request For Proposals No. M67854-07-R-5060 Expired .......... 7

C. The Court's June 5, 2008 Opinion Specifically Enjoined The USMCSC From Allowing Offerors To Modify Their Final Proposal Revisions .......... 7

D. The Request For Proposals And The Request For Quotes Are Materially Different .......... 8

E. Klinge Has Failed To Show That The USMCSC Engaged In Pretext Or Bad Faith By Unlawfully Attempting To Steer Award To Sea Box .......... 8

III. This Court Should Deny Klinge's Request For A Permanent Injunction As Well As Other Requested Relief That Is Not Properly Awarded As Part Of A Bid Protest .......... 10

A. The Factors To Be Considered In Determining Whether To Award A Permanent Injunction Favor The Government .......... 10

1. Klinge Has Not Demonstrated That It Will Be Irreparably Harmed If A Permanent Injunction Is Denied .......... 11

2. Klinge Has Not Demonstrated That Its Harm Is Greater Than The Harm The Agency Will Suffer .................................. 12

3. Klinge Has Not Demonstrated That A Permanent Injunction Would Serve The Public Interest ............................................... 13

## TABLE OF AUTHORITIES

### CASES

ATA Def. Indus., Inc. v. United States,
38 Fed.Cl. 489 (1997) .......... 3

Banknote Corp. of Am., Inc. v. United States,
365 F.3d 1345 (Fed. Cir. 2004) .......... 3

Bayou des Familles Dev. Corp. v. United States,
130 F.3d 1034 (Fed. Cir.1997) .......... 2

Bean Dredging Corp. v. United States,
22 Cl. Ct. 519 (1991) .......... 11

CACI, Inc.-Federal v. United States,
719 F.2d 1567 (Fed. Cir. 1983) .......... 9

CW Government Travel, Inc. v. United States,
46 Fed. Cl. 554 (2000) .......... 4

Chapman Law Firm Co. v. United States,
67 Fed. Cl. 188 (2005) .......... 12

Citing American Gen. Leasing, Inc. v. United States,
218 Ct. Cl. 367,
587 F.2d 54 (1978) .......... 4

Computer Products, Inc., B-284702
May 24, 2000, 2000 CPD ¶ 95 .......... 3

Cybertech Group, Inc. v. United States,
48 Fed. Cl. 638 (2001) .......... 9

Ellsworth Assoc., Inc. v. United States,
45 Fed.Cl. 388 (1999) .......... 3

Eracent, Inc. v. United States,
79 Fed. Cl. 427 (2007) .......... 3

Gadsden v. United States,
111 Ct. Cl. 487,
78 F.Supp. 126 (1948) .......... 9

Government Travel, Inc. v. United States,
61 Fed. Cl. 559 (2004) ........ 11

Illinois Tool Works, Inc. v. Grip-Pak, Inc.,
906 F.2d 679 (Fed. Cir. 1990) ........ 11

Kalvar Corp. v. United States,
211 Ct. Cl. 192,
543 F.2d 1298 (1976) ........ 4, 9

Klinge Corporation v. United States,
82 Fed.Cl. 127 (2008) ........ 2, 7

Krygoski Constr. Co. v. United States,
94 F.3d 1537 (Fed. Cir. 1996) ........ 9

LaMear v. United States,
9 Cl. Ct. 562, aff'd,
809 F.2d 789 (Fed. Cir. 1986) ........ 9

Lermer Germany GmbH v. Lermer Corp.,
94 F.3d 1575 (Fed. Cir. 1996) ........ 11

Myers Investigative & Sec. Servs., Inc. v. United States,
275 F.3d 1366 (2002) ........ 3

Parcel 49C Ltd. Partnership v. United States,
31 F.3d 1147 (C.A. Fed. 1994) ........ 8

Railway Labor Executives Ass'n v. Gibbons,
448 U.S. 1301 (1980) ........ 11

Reebok Int'l Ltd. v. J. Baker, Inc.,
32 F.3d 1552 (Fed. Cir. 1994) ........ 11

San Diego Beverage & Kup v. United States,
997 F.Supp. 1343 (S.D. Cal. 1998) ........ 12

SEI Group, Inc., B-299108
Feb 6, 2007 CPD ¶ 35 ........ 5

Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.,
74 F.3d 1216 (Fed. Cir. 1996) ........ 11

Tenacre Foundation v. INS,
78 F.3d 693 (D.C. Cir. 1996) ........ 11

Torncello v. United States,
231 Ct.Cl. 20,
681 F.2d 756 (1982) ........ 9

VSE Corp., B-290452.2
Apr. 11, 2005 CPD ¶ 111 ........ 5

Wisconsin Gas Co. v. FERC,
758 F.2d 669 (D.C. Cir. 1985) ........ 11

Wood v. Carpenter,
101 U.S. (11 Otto) 135,
25 L. Ed. 807 (1879) ........ 9

Zenith Radio Corp. v. United States,
710 F.2d 806 (Fed. Cir. 1983) ........ 11

**STATUTES**

31 U.S.C. § 3551(2) ........ 3

41 U.S.C. § 259(b)(3) ........ 3

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(Bid Protest)**

| | | |
|---|---|---|
| KLINGE CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant,<br><br>and<br><br>SEA BOX, INC.<br><br>Defendant-Intervenor. | ) | No. 08-551C<br><br>(Judge Bruggink)<br><br>**FILED UNDER SEAL PURSUANT TO COURT'S PROTECTIVE ORDER** |

**DEFENDANT'S REPLY TO PLAINTIFF'S COMPLAINT**
**AND MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to the Court's August 26 and 29, 2008 Orders, defendant, the United States, hereby responds to the Complaint ("Compl") and Memorandum of Points and Authorities ("Pl. Memo.") filed by plaintiff, Klinge Corporation ("Klinge" or "plaintiff").

## STATEMENT OF THE ISSUES

1. Whether a plaintiff that does not have a Federal Supply Schedule contract possesses standing to challenge a procurement issued under the General Services Administration Federal Supply Schedule ("GSA FSS").

2. Whether the decision of the United States Marine Corps Systems Command ("USMCSC" or "agency") to purchase a limited number of Large Field Refrigeration Systems ("LFRS") under the GSA FSS to meet an immediate need was arbitrary, capricious, an abuse of discretion or not otherwise in accordance with law.

## STATEMENT OF THE CASE

Klinge seeks a permanent injunction enjoining the agency from "constructively canceling" Solicitation No. M67854-07-R-5060 ("RFP"). Pl. Memo. 2. Moreover, plaintiff seeks to permanently enjoin the agency from proceeding with Request For Quotation No. 296298 ("RFQ") under the. GSA FSS. Id. In support of its allegations, plaintiff mischaracterizes the administrative record, mischaracterizes and relies upon inapposite case law, and assumes that Sea Box, Inc., (Sea Box) will be awarded the RFQ.

## COUNTER STATEMENT OF FACTS

Defendant hereby incorporates by reference the statement of facts set forth in our motion for judgment upon the administrative record filed in Klinge Corporation v. United States, 82 Fed.Cl. 127 (2008) docketed as No. 08-134C ("prior litigation"). We shall provide the relevant factual assertions that refute plaintiff's various mischaracterization of the record in our argument section below. We respectfully ask the Court to look to the administrative record filed in the prior litigation. Bayou des Familles Dev. Corp. v. United States, 130 F.3d 1034, 1040 n. 7 (Fed. Cir.1997) (court may look to prior litigation of record).

## ARGUMENT

As will be demonstrated more fully below, Klinge has failed to show that it possesses standing to challenge a procurement issued under the GSA FSS program because Klinge does not have a FSS contract. Moreover, in light of the facts and circumstances of the prior litigation, the agency reasonably concluded that changing contract vehicles from a request for proposals under full and open competition to a GSA FSS purchase was the most appropriate way of satisfying its immediate requirement to purchase 150 LFRS.

## I. **Plaintiff Lacks Standing To Challenge A Procurement On The General Services Administration Federal Supply Schedule**

There is no dispute that Klinge does not possess a FSS contract for LFRS. Accordingly, Klinge does not possess standing to challenge procurements issued under the GSA FSS. FAR Part 8 governs agency acquisitions made pursuant to the FSS program. Ellsworth Assoc., Inc. v. United States, 45 Fed.Cl. 388, 393-394 (1999). See also Computer Products, Inc., B-284702, May 24, 2000, 2000 CPD ¶ 95 at 3 (holding that the procedures of FAR Part 15, governing contracting by negotiation, do not apply to procurements under the FSS program). Furthermore, as this Court recently recognized:

> [a]n agency placing an order pursuant to the GSA FSS procedures is not required to consider a contractor without a FSS contract. 48 C.F.R. § 8.405-6. A non-FSS contractor generally thus does not have standing to protest an order awarded pursuant to the GSA FSS contract program because such a contractor is not an "actual or prospective bidder[] or offeror[] whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2)(A); see also Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1352 (Fed. Cir. 2004); Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1370 (2002). However, a non-FSS contractor may have standing to challenge the award of any non-FSS items on the FSS order, assuming it could have furnished them, because these non-FSS items are subject to the requirement for "full and open competition" as defined in 41 U.S.C. § 259(b)(3). See ATA Def. Indus., Inc. v. United States, 38 Fed.Cl. 489, 494-97 (1997).

Eracent, Inc. v. United States, 79 Fed. Cl. 427, 431 (2007).

Here, Klinge has failed to, and cannot otherwise, demonstrate that it is an actual or prospective bidder on the RFQ. Indeed, Klinge has not even attempted to show that it is eligible for award under the GSA FSS. Instead, Klinge makes broad allegations of bad faith and pretext and relies upon previous litigation to argue that it has standing to challenge the RFQ, issued in a separate solicitation. Klinge does not challenge the

USMCSC's right to purchase items from the GSA FSS generally, rather, Klinge's entire case is predicated upon its allegation that the agency is engaging in pretext to steer the award of the contract for LFRS contract to Sea Box.

## II. The Agency's Decision To Utilize The General Service Administration Federal Supply Schedule Was Rationale Based Upon The Circumstances And In Accordance With Applicable Law And Regulation

The USMCSC's use of the General Services Administration Federal Supply Schedule ("GSA FSS") as a procurement vehicle was not unreasonable under the circumstances, and was within the discretion of the contracting officer. As discussed below, the contracting officer did not cancel the RFP; however, had the contracting officer chosen to cancel, he could have reasonably done so. There is no question that cancellation of a solicitation is permitted by the FAR. See FAR § 15.206(e) (indicating that a contracting officer may cancel a solicitation "regardless of the stage of the acquisition"). Furthermore, any analysis of an allegation of government bad faith begins with a presumption that public officials acted in good faith. Kalvar Corp. v. United States, 211 Ct. Cl. 192, 543 F.2d 1298, 1301-02 (1976). "[W]here the Government alleges a reasonable basis for canceling the solicitation, i.e. a revision in specifications, it is clear plaintiffs must do more than assert what amounts to mere naked charges of arbitrary and capricious action...." CW Government Travel, Inc. v. United States, 46 Fed. Cl. 554, 559 (2000) (Citing American Gen. Leasing, Inc. v. United States, 218 Ct. Cl. 367, 587 F.2d 54, 58-59 (1978)). As we will demonstrate more fully below, the USMCSC possessed a reasonable basis for deciding not to reopen the RFP, instead electing to issue the RFQ to purchase a limited number of LFRS.

**A. During Case No. 08-134, It Was Reasonable For The Agency To Have Concerns Regarding Klinge's Compliance With The Trade Agreements Act of 1979 For Contract Line Item 0003**

During Klinge's second protest before the Government Accountability Office ("GAO"), the agency realized for the first time that Klinge's Final Proposal Revision may not have been compliant with the Trade Agreements Act of 1979 ("TAA"). Specifically, the GAO found:

> Klinge's proposed list of [redacted] (appendix F to its proposal), included [redacted]s that were described in a separate list in its proposal (appendix B) as being "[redacted]" parts and [redacted], which would appear to render the proposal not compliant with the Trade Agreements Act. Klinge Comments, Jan. 23, 2008, at 3. In response to questions from GAO during this protest, Klinge explained that while it intended to use [redacted] in the LFRSs, it would deliver to the agency the [redacted] when included in the CLIN 0003 parts support package instead would be made in the [redacted] Klinge's Comments, Jan. 23, 2008 at 3. Klinge's claimed intention was not apparent from its proposal.

AR1414 (Tab 45) (No. 08-134).[1] Review of Klinge's initial proposal, discussion response, and final proposal revision support the GAO's finding that Klinge is not TAA compliant for Contract Line Item ("CLIN") 0003 because Klinge stated that [redacted]. See AR622 (Tab 9) and AR858-859 (Tab 20) (No. 08-134C). Moreover, in a declaration by Henrik Klinge in response to questions from the GAO, Klinge [redacted]. AR1346 (Tab 38) (No. 08-134C). Thus, there is no question that, based upon Klinge's initial proposal, discussion response, and final

[1] For ease of reference, and to avoid confusion, we include the Court's docket number immediately after the pinpoint cite so as to distinguish between the two administrative records currently at issue in this matter.

proposal revision, Klinge was not 100% compliant for all of the RFP's CLINs.

Furthermore, the record demonstrates that the contracting officer questioned Klinge's TAA compliance for CLIN 0003. Specifically, the contracting officer made the following determination on April 2, 2008:

> I am unable to make the same determination regarding Klinge's compliance with the TAA as it relates to the spare parts required by CLIN 0003. During the previous source selection decision, there was no basis to question the TAA certification provided by Klinge pursuant to DFARS 252.225-7020. However, since that time GAO raised an issue to Klinge regarding the TAA compliance of [redacted] listed in its proposal. Klinge's response was that indeed these [redacted] their discussion responses which indicated only [redacted]. Mr. Klinge's declaration to Mr. Ashen appears to have only confused the issue rather than resolve it. Specifically, Mr. Klinge indicated that [redacted] As Mr. Ashen commented in the GAO protest, this intent was not evident from the discussion responses or FPR of Klinge. The declaration of the protester during the pendency of the GAO protest does not provide a solid basis for a reasoned TAA compliancy determination.

AR1459 (Tab 48) (No. 08-134C). Based on that determination, and additional enumerated reasons, the contracting officer advised the Court that he intended to cancel the RFP.

The record also reflects that the contracting officer never officially found Klinge TAA compliant for CLIN 0003. Instead, the contracting officer found that both "Klinge and Sea Box have been quite clear in stating their intention to comply with their legal and contractual obligations regarding the TAA." AR1482 (No. 08-134C). This explanation is consistent with the agency's stated view that because the offerors had bound themselves to comply with the TAA, compliance was a matter of contract administration.

**B. The Agency Reasonably Exercised Its Discretion And Concluded That Request For Proposals No. M67854-07-R-5060 Expired**

As Klinge alleges in paragraph 153 of its statement of facts, and as we informed the Court in the August 1, 2008 teleconference, the USMCSC's position with respect to the RFP is that, absent an overt act on the part of the agency, the RFP is no longer viable. This position is based upon the fact that the RFP 's contract performance period has expired and the RFP was issued more than 16 months ago. AR29 (Tab 3) (No. 08-134C). Additionally, consistent with the Court's June 5, 2008 opinion and the applicable provisions of the FAR, the agency was not required to take a specific course of action, such as awarding the contract to Klinge; the agency followed the Court's order and then proceeded to meet its needs in a reasonable manner.

### C. The Court's June 5, 2008 Opinion Specifically Enjoined The USMCSC From Allowing Offerors To Modify Their Final Proposal Revisions

In its June 5, 2008 Opinion, this Court specifically found that:

> The purpose of the remand was to obtain clarification of the proposals as they existed, not to turn clarification into an opportunity for modification. The remand order called for the agency to obtain a description of the "entire process of manufacturing, assembly and testing." The agency thus could supplement its understanding of what the parties had offered at the time of award. Sea Box did not, however, limit itself to explaining its existing proposals. Instead it offered, in the April 1, 2008 letter from Sea Box's counsel to the CO, the possibility that Sea Box could completely alter its method of manufacture by shipping the refrigeration unit and the container to the United States. *See* (AR at 1424.) We do not view this as properly part of Sea Box's FPR. We note also that the offer was reluctant and conditional, and, in any event, not accepted by the agency.

Klinge Corp. v. United States, 82 Fed.Cl. 127, 134, (2008). As the contracting officer explains in his August 22, 2008 declaration, he interpreted the foregoing from the Court's opinion to mean that he could not award the RFP to Klinge based upon its non-compliance for CLIN 0003 because doing so would amount to a modification to its discussion response and final proposal revision. AR47 (Tab 15) (No. 08-551C).

**D. The Request For Proposals And The Request For Quotes Are Materially Different**

Contrary to Klinge's various allegations, the two contract vehicles are materially different. The original RFP was a five-year Indefinite Duration/Indefinite Quantity ("IDIQ") contract that had eight CLINs, included a maximum of 1500 LFRSs (CLIN 0001), and included spare parts support package (CLIN 0003). AR45 (Tab 4) (No. 08-134C). In stark contrast, the RFQ is a one-time purchase, has a maximum quantity of 150 units (10% of CLIN 0001 in the RFP), and does not include the spare parts (CLIN 0003) or six of the other in the RFP, and is intended to be a one-time e-buy. AR41 (Tab 11) (08-551C). The only reasonable interpretation is that the two procurements are materially different because they have unique prices, delivery schedules, and scopes of products and services.

**E. Klinge Has Failed To Show That The USMCSC Engaged In Pretext Or Bad Faith By Unlawfully Attempting To Steer Award To Sea Box**

Klinge alleges that "any rationale proffered by the agency to justify the decision not to award a contract pursuant to the solicitation is a pretext to steer the award towards Sea Box." Pl. Memo., at 16. In support of its contention, Klinge relies upon Parcel 49C Ltd. Partnership v. United States, 31 F.3d 1147 (C.A. Fed. 1994). However, Klinge's reliance Parcel 49C Ltd. Partnership ("Parcel 49C") is misplaced. In Parcel 49C, an agency witness specifically testified that the agency's had an animus against the plaintiff. Id. at 1151. Here, there is no proverbial smoking gun and plaintiff can point to nothing in either administrative record that demonstrates any animosity or design to ensure Klinge does not receive an award.

Klinge also argues that the USMSCS reversed course from potentially awarding the contract to Klinge to electing not to during the time between the Court's two remands, and that

this alleged course chance evinces pretext. Pl. Memo. at 17-18. The contracting officer's April 2 and April 14, 2008 declarations (discussed above) cannot reasonably be understood as Klinge characterizes them. In the first declaration, the contracting officer focused on CLIN 0003 and clearly stated his finding that neither offeror was TAA compliant. It was only after the further remand communication that the contracting officer determined that both offerors understood the compliance requirements and intended to comply.

Klinge's argument that the contracting officer's declarations reflect pretext fails to meet the high standard for proving bad faith that the United States Court of Appeals for the Federal Circuit and this Court have long held:

> [s]ignificantly, there is myriad case law in this court and the Federal Circuit to establish that "it requires 'well-nigh irrefragable proof' to induce the court to abandon the presumption of good faith dealing" traditionally afforded to the government. Torncello v. United States, 231 Ct.Cl. 20, 681 F.2d 756, 770 (1982). To establish "irrefragable proof" the plaintiff must show evidence of "some specific intent to injure the plaintiff." Id. (emphasis added). See also LaMear v. United States, 9 Cl. Ct. 562, 570, aff'd, 809 F.2d 789 (Fed. Cir. 1986), (citing Wood v. Carpenter, 101 U.S. (11 Otto) 135, 143, 25 L. Ed. 807 (1879)). Proof of government wrongdoing must be based upon "hard facts," not "suspicion or innuendo." CACI, Inc.-Federal v. United States, 719 F.2d 1567, 1569-82 (Fed. Cir. 1983). The type of government actions that have been deemed to rise to the level of this specific intent include those " 'motivated alone by malice;'" Gadsden v. United States, 111 Ct. Cl. 487, 78 F.Supp. 126, 127 (1948); "'actuated by animus toward the plaintiff;'" Kalvar Corp. v. United States, 211 Ct.Cl. 192, 543 F.2d 1298, 1302 (1976); and those the government enters "with no intention of fulfilling its promises," Krygoski Constr. Co. v. United States, 94 F.3d 1537, 1545 (Fed. Cir. 1996).

Cybertech Group, Inc. v. United States, 48 Fed. Cl. 638, 650-651, (2001).

Here, plaintiff has failed to point to any "hard facts" that show any malice or animosity towards Klinge. Indeed, many of the "facts" pointed out by Klinge are, quite simply, not supported in the record. For instance, Klinge essentially accuses the agency of reducing the delivery schedule in the RFQ to 120 days from 180 days in the RFP to match it up with Sea

Box's performance period on its GSA FSS Contract. Pl. Memo. at 5. This assertion demonstrates an intentional disregard for the record, which shows that the USMCSC had site visits with four prospective offerors, to include Klinge, and determined in its September 2006 – March 2007 market research, that the average performance period of the group of prospective offerors was between 90 to 120 days. AR25 & 28 (Tab 2) (08-134C). Klinge also alleges that any immediate need the USMCSC may now have is "self-created" and that the agency "sat idly for two months." Pl. Memo. at 5. Again, Klinge is simply wrong because the record shows that the USMCSC immediately began the laborious effort to initiate the procurement process on June 6, 2008, the day after the Court issued its Opinion. AR1 (Tab 1) (No. 08-551C).

## III. This Court Should Deny Klinge's Request For A Permanent Injunction As Well As Other Requested Relief That Is Not Properly Awarded As Part Of A Bid Protest

In its Complaint and Memorandum of Points and Authorities, Klinge asks this Court for, among other things, specific relief, including declaratory judgment that the agency's actions, which in Klinge's view constitutes constructive cancellation of the RFP, was arbitrary, capricious, and an abuse of discretion. Pl. Memo. 42-43. Klinge also seeks an order directing the agency to award a contract to Klinge under the RFP if appropriate, or directing the agency to perform a best value comparison of the offerors in the competitive range and award a contract to the offeror that represents best value. Id. Klinge further seeks bid preparation costs, attorney fees, and costs for pursuing these proceedings. Id.

### A. The Factors To Be Considered In Determining Whether To Award A Permanent Injunction Favor The Government

To obtain permanent injunctive relief, Klinge must demonstrate: (1) entitlement to

relief on the merits; (2) that irreparable harm would result if an injunction does not issue; (3) that the harm suffered if injunctive relief is not granted will outweigh the harm to the Government and third parties if the temporary relief is granted; and (4) that granting the injunction serves the public interest. Sofamor Danek Group, Inc. v. DePuy-Motech, Inc., 74 F.3d 1216, 1219 (Fed. Cir. 1996); Zenith Radio Corp. v. United States, 710 F.2d 806, 809 (Fed. Cir. 1983). The grant of an injunction is "extraordinary relief" and, therefore, the Court applies "exacting standards." Lermer Germany GmbH v. Lermer Corp., 94 F.3d 1575, 1577 (Fed. Cir. 1996). For this reason, Klinge must point to clear and convincing evidence that each factor has been satisfied. Government Travel, Inc. v. United States, 61 Fed. Cl. 559, 574 (2004); Bean Dredging Corp. v. United States, 22 Cl. Ct. 519, 522 (1991).

As we demonstrated above, the contracting officer did not act arbitrarily or capriciously when he determined that the RFP was no longer a viable option and when he applied his understanding of the Court's June 5, 2008 opinion to the RFP and thus, Klinge has failed to satisfy the first prong of injunctive relief.

Even if this Court were to find that the USMCSC acted arbitrarily, capriciously or contrary to the law, Klinge is not automatically entitled to the extraordinary relief it requests and has not done so.

1. Klinge Has Not Demonstrated That It Will Be Irreparably Harmed If A Permanent Injunction Is Denied

To constitute irreparable harm, Klinge's alleged injury must be "certain and great," not theoretical. Tenacre Foundation v. INS, 78 F.3d 693, 695 (D.C. Cir. 1996); Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985).

Moreover, "[n]ormally, an injury is not considered 'irreparable' if the only injury

alleged is monetary loss." Chapman Law Firm Co. v. United States, 67 Fed. Cl. 188, 193 (2005).

> In every procurement award there are generally more losers than winners. To find that a losing procurement participant suffers irreparable harm merely because it did not succeed with its contract proposal would create in the losing party an automatic right to injunctive relief.

San Diego Beverage & Kup v. United States, 997 F.Supp. 1343, 1347 (S.D. Cal. 1998).

In this case, Klinge does not allege any irreparable that it will incur if the permanent injunction is denied. In fact, because Klinge is currently a [redacted], Klinge cannot demonstrate that it will suffer irreparable harm if the RFQ goes forward. Furthermore, since an award decision has not been made, any alleged harm suffered by Klinge is only theoretical.

2. Klinge Has Not Demonstrated That Its Harm Is Greater Than The Harm The Agency Will Suffer

Klinge's argument for this prong appears to be that the agency has taken an extremely long time to complete this procurement, so it cannot suffer any harm if a permanent injunction is issued. Pl. Memo. 20-21. Klinge also simply makes the broad assertion that non-issuance of a permanent injunction would be devastating to Klinge. Id. The harm to the Government if the contract was enjoined is substantial. Although the USMCSC only recently determined that the LFRS are now needed to support the warfighters in Iraq and Afghanistan, the timing of this determination does not diminish the harm the agency will suffer should the Court issue a permanent injunction. Compl. 39. Moreover, the record demonstrates that the agency did not

"sit back on its laurels" as Klinge claims, but has actively sought a fair and equitable manner in which to procure the LFRS. See AR1 (Tab 1) (No. 08-551C).

Accordingly, this factor weighs in favor of the Government.

3. Klinge Has Not Demonstrated That A Permanent Injunction Would Serve The Public Interest

A permanent injunction enjoining the agency from proceeding with the RFQ would not serve the public interest. It is in the public's interest for the USMCSC to have the LFRS so they may be tested and sent out to the United States Navy. If a permanent injunction were issued, the agency would have no choice but to begin the procurement process all over because Klinge is not eligible for award under the RFP and does not have a GSA FSS contract, so there is no viable alternative at the present time to acquire the LFRS. The public interest is best served by allowing the USMCSC to purchase the 150 LFRS needed by our warfighters in the field from the GSA FSS.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court dismiss Klinge's complaint and deny its prayer for relief denied.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Kirk Manhardt
KIRK MANHARDT
Assistant Director

Of Counsel:
BRENT CURTIS
Associate Counsel
Marine Corps Systems Command
2200 Lester Street
Quantico, Virginia 22134-6050

/s/ Christopher L. Krafchek
CHRISTOPHER L. KRAFCHEK
Trial Attorney
Civil Division,
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530
(202) 305-0041 (Phone)
(202) 514-8624 (Facsimile)

September 3, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 3rd day September, 2008, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Christopher L. Krafchek