# In the United States Court of Federal Claims

No. 08-551C
(Originally Issued Under Seal: April 10, 2009)
(Reissued: April 27, 2009)[1]


* * * * * * * * * * * * * * * * * * * * * *

KLINGE CORPORATION,

                        *Plaintiff*,

v.

THE UNITED STATES,

                        *Defendant,*

and

SEA BOX, INC.

                        *Intervenor.*

Request for reconsideration; bid protest; bid preparation costs; standing.

* * * * * * * * * * * * * * * * * * * * * *


*Richard P. Rector* and *Seamus Curley*, Washington, DC,  for plaintiff.

*Christopher L. Krafchek*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Michael F. Hertz*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Kirk Manhardt*, Assistant Director, for defendant. *Brent Curtis*, Marine Corps Systems Command, Quantico, VA, of counsel.

*Robert Farber*, Cherry Hill, NJ, for intervenor.

---

[1]  This opinion was first issued under seal on April 10, 2009.  The parties were directed to propose redactions to the opinion on or before April 17, 2009.  None were proposed.

_____

OPINION

_____

BRUGGINK, *Judge*.

Pending in this bid protest are plaintiff's and defendant's motions for reconsideration of our opinion of September 12, 2008. That opinion resolved the second bid protest in this court arising out of the Marine Corps' ("agency") continuing effort to procure Large Field Refrigeration Systems ("LFRS"). In the first proceeding, we granted injunctive relief to plaintiff, Klinge Corp. ("Klinge"), enjoining the Marine Corps from going forward with its putative award to intervenor, Sea Box Inc. ("Sea Box"). In this second action, plaintiff challenged the agency's use of a different procurement vehicle to purchase a smaller quantity of LFRSs, once again from Sea Box. In resolving that second action, we denied the injunctive relief sought by plaintiff, although we ordered reimbursement of plaintiff's bid preparation and proposal costs.

Plaintiff's motion for reconsideration asserts that new information calls into question our denial of injunctive relief relating to the second procurement. Defendant's motion asks us to reconsider the award of bid preparation and proposal costs to plaintiff, or to clarify that those costs only relate to the second procurement. The matter has been fully briefed, and oral argument was held on March 10, 2009. For the reasons stated below, both motions are denied.

PROCEDURAL HISTORY[2]

The Marine Corps' first effort at obtaining LFRSs was through the use of a Request For Proposals ("RFP") for an indefinite delivery, indefinite quantity ("IDIQ") contract for between 10 and 300 LFRSs. *See Klinge Corp. v. United States*, 82 Fed. Cl. 127 (2008) ("*Klinge I*"). We held in *Klinge I* that Sea Box could not receive the award because the agency's failure to disqualify

_____

[2] The facts are drawn from our prior opinions and from the administrative records prepared in connection with both procurements. In addition, the court permitted the parties to supplement the administrative record in connection with plaintiff's motion for reconsideration both prior to and during oral argument.

it for non-compliance with the Trade Agreements Act ("TAA"), 19 U.S.C. §§ 2501 *et seq.* (2006), was arbitrary and not in accordance with law. 82 Fed. Cl. at 137-38. The action was dismissed, and plaintiff was later awarded attorney fees.

On July 31, 2008, plaintiff filed a new complaint. In the interim, the agency had elected to obtain twenty-five LFRSs from the General Services Administration Federal Supply Schedule ("GSA FSS") using a Request for Quotations ("RFQ"). *See Klinge v. United States*, 83 Fed. Cl. 773 (2008) ("*Klinge II*"). Plaintiff was ineligible to compete because it was not on the FSS. Plaintiff therefore sought an injunction on the grounds that the agency had improperly cancelled the RFP and was using the RFQ to steer work to the intervenor.

In our September 12, 2008, opinion, we denied injunctive relief. It was important to the result that plaintiff did not have standing to challenge the RFQ because it was ineligible for an award under the FSS. We agreed with plaintiff that the follow-on contract would not have occurred but for the cancellation of the award to Sea Box and but for the agency's mistaken belief that Klinge was ineligible for award under the RFP. We nevertheless held that the error did not implicate the integrity of the RFQ and hence did not warrant injunctive relief. *See id.* at 780. We concluded that the limit of plaintiff's standing to challenge the RFQ was the opportunity to show that the agency's action reflected something approaching bad faith or something otherwise seriously undermining the integrity of the procurement. We ultimately found no evidence of that. Instead, we awarded the alternative relief requested by plaintiff– bid preparation and proposal costs.

In denying injunctive relief, we took into account the fact that one of the potential awardees under the RFQ was Charleston Marine Containers Inc. ("CMCI"). CMCI is a schedule contractor but it did not yet have an LFRS on the schedule. Klinge had applied to have its refrigeration unit added to CMCI's offerings on the FSS, so the possibility existed that Klinge might obtain benefits as a subcontractor under the RFQ. During the pendency of *Klinge II*, defendant considered it a possibility that CMCI would be awarded the contract as it appeared to offer the best value under the RFQ. On December 12, 2008, however, the agency awarded an order for twenty-five LFRSs to Sea Box under a Blanket Purchase Agreement ("BPA"). At that time, CMCI was not able to offer an LFRS because Klinge's equipment had not yet been added to CMCI's FSS offerings.

Defendant filed its motion for reconsideration on December 18, 2008, contesting the award to plaintiff of bid preparation and proposal costs to the extent they arise out of the original RFP. Defendant argues that the award of injunctive relief in *Klinge I* precludes the monetary relief awarded in *Klinge II*, at least to the extent it relates to the first procurement. Plaintiff contends that the law permits the award of both injunctive and monetary relief.

Plaintiff filed its motion for reconsideration on December 23, 2008, asserting that information it recently obtained calls into question the factual basis of our denial of injunctive relief in *Klinge II*. Plaintiff asserts that the agency's inaccurate market research should be "the straw that breaks the camel's back to support a finding by the Court that the agency's determination that Klinge's proposal under the RFP was non-compliant . . . was pretextual and designed to ensure the award of the contract to Sea Box." Pl.'s Mot. for Recons. at 8. Plaintiff further claims that the December 12, 2008, award of the contract to Sea Box was an unjustified sole source award and a violation of Federal Acquisition Regulation ("FAR") Subparts 8.405-6 and 8.405-1(c)(1). Defendant contends, however, that the agency satisfied the surveying requirements of FAR Subpart 8.405-1(c)(1) and that there is no evidence of pretext. A brief review of the agency's market research and surveying efforts as set forth in the Administrative Record ("AR") is provided below.

## BACKGROUND

In his declaration of August 22, 2008, the Contracting Officer ("CO") Terence McGinn, explains the efforts that he and Program Manager ("PM"), Michael Gallagher, undertook after the court's decision instructing the agency that the award under the RFP to Sea Box could not stand. According to the CO, the agency opted in favor of attempting to use the GSA FSS because it offered the advantage of speed, at least in connection with an initial, smaller order, and it obviated concerns about TAA compliance.

Mr. Gallagher provided a supplemental declaration on February 4, 2009. In it, he explains that in doing market research, he began with the data he had accumulated prior to the decision in 2007 to utilize an RFP. During his 2007 market research, Mr. Gallagher visited the production facilities of a number of contractors potentially capable of producing LFRSs. At that time, none of these contractors had an LFRS on the GSA schedule. Nevertheless, three of the vendors– AAR Mobility Systems ("AAR"), CMCI, and Sea Box–

indicated to Mr. Gallagher that "if the Marine Corps were going to be procuring LFRS via GSA, they intended to get [an] LFRS on a GSA schedule contract."  AR Tab 18.

When Mr. Gallagher revisited the question of procuring LFRSs in June 2008, he "conducted follow-up market research."  *Id.*  He provides no details as to what that follow-up research entailed, although defendant points to references in the administrative record regarding the agency's search of electronic databases available to it through GSA to find the two separate, constituent components of an LFRS.  *See* AR Tabs 22-24.   It is undisputed that CMCI, Sea Box, and AAR are all schedule contractors.   The agency searched the relevant Special Item Number ("SIN") on the GSA schedule (617-2), "Purchase of Container Systems," which is a catch all category that includes container systems.  *See* AR Tab 25.  Tab 25 of the AR, which the court allowed defendant to supplement during oral argument, is a snapshot of this schedule as of March 10, 2009.  Tab 25 as supplemented shows AAR as a schedule contractor offering items under SIN 617-2.[3]  Tab 22 indicates that AAR offers both containers and refrigeration units.

From this research, as supplemented by his prior field visits, Mr. Gallagher produced an updated table of vendors.  In it, AAR and Sea Box are both labeled as on the schedule and capable of offering a "viable solution."  *Id.*  CMCI was shown on the schedule as not capable of offering a solution.  Mr. Gallagher states that this was a mistake he cannot explain.  Instead, he concludes that an accurate depiction would have shown CMCI as a viable option as well.  The conclusion of the agency's market research, therefore, was that at least three entities– Sea Box, CMCI, and AAR– were capable of offering a "viable solution" through the FSS.

---

[3]Plaintiff contends that this information cannot be used to prove what AAR was offering in June 2008.  Defendant responds that the submission it was allowed to offer at oral argument demonstrates that AAR has been on the GSA schedule with respect to SIN 617-2 since August 9, 2004.  Plaintiff, however, points out that the master contract can be, and frequently is, amended.

DISCUSSION

*I.  Plaintiff's Motion for Reconsideration*

The new information plaintiff offers in its motion for reconsideration is that AAR does not have and never did have an LFRS on the GSA schedule. This is supported by email correspondence between Heinrich Klinge and Arthur Breithhaupt, AAR's Vice President of Sales and Marketing.  Mr. Breithaupt recites in his email dated November 21, 2008, "as to whether AAR Mobility Systems was or is on the GSA schedule for the 20' ISO Refrigerated Container, the answer is no."  Pl.'s Mot. for Reconsideration, Attach. B.  If AAR was not in fact on the schedule with respect to LFRSs, then according to plaintiff, there were, at most, only two vendors that were capable of responding to an RFQ for LFRSs and not three as purportedly required by FAR 8.405-1(c)(1).  Plaintiff asserts that this is a demonstration of both pretext by the agency against Klinge and a violation of procurement law.  We will analyze first plaintiff's argument that the government's actions were a violation of procurement law and, second, that the procurement was pretextual.

*A.  Was the Procurement a Violation of Law?*

Plaintiff requests that we permanently enjoin the agency from accepting performance from Sea Box of the recently awarded RFQ because the new evidence reveals that AAR did not offer an LFRS on its schedule and therefore three contractors were not capable of bidding on the RFQ.  According to plaintiff, this is a violation of FAR 8.405-1(c)(1).  FAR Subpart 8.405-1(c)(1) provides that, before placing an order on the FSS for purchases of the size contemplated here, "an ordering activity shall consider reasonably available information . . . by surveying at least three schedule contractors through the GSA Advantage! on line shopping service . . . ."

The parties fundamentally disagree on what is meant by the surveying requirements set forth in FAR 8.405-1(c)(1).  Plaintiff contends that an award made under an RFQ when three contractors are not capable of bidding on the solicitation violates the FAR.  Applicable procurement regulations, it contends, require the agency to satisfy itself through accurate surveying that at least three contractors who were capable of making offers had LFRSs on their schedule.

Defendant contends that FAR Subpart 8.405-1(c)(1) does not require the agency to locate any particular number of vendors actually capable of offering the item sought.  Instead, according to defendant, the FAR requires a more general survey of the marketplace, for the purpose of ensuring full and fair competition.  Defendant contends that it satisfied the surveying requirements of FAR 8.405-1(c)(1) when the agency conducted market research in 2007 and found that at least three entities– Sea Box, CMCI, and AAR– were capable of offering a viable solution through the FSS.  Most important from the government's perspective, however, is that when the time came to solicit, the agency sent notices via GSA's online procurement system ("GSA e-Buy online") to all vendors offering items under SIN 617-2.  SIN 617-2 is a list of items which covers many different types of containers.  On the date of oral argument, over sixty vendors were listed as offering items covered under SIN 617-2.   This GSA e-Buy online solicitation, the government contends, satisfied surveying requirements and ensured full and fair competition pursuant to FAR 8.405-1(c)(1).

Defendant also argues that plaintiff does not have standing to challenge the current procurement because Klinge was incapable of responding to the RFQ.  We consider the jurisdictional issue of standing first.

The Tucker Act gives the court jurisdiction over a claim by "an interested party objecting to . . . the award of a contract or any alleged violation of statute or regulation in connection with a procurement . . . ."  28 U.S.C. § 1491(b)(1).  An interested party is defined in accordance with the Competition in Contracting Act ("CICA") as a protester who is an "actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract."  31 U.S.C. § 3551(2)(A).  A subcontractor is not an interested party, as it is not considered to be an actual or prospective bidder.  *See Eagle Design & Mgmt. v. United States*, 62 Fed. Cl. 106, 108 (2004).

As plaintiff concedes, it was not eligible to compete on its own under the FSS RFQ.  Instead, its interest is as a potential subcontractor to CMCI, which is a contractor on the schedule.[4]  Plaintiff contends that it has standing

---

[4] As of the date of oral argument, March 10, 2009, Klinge still had not been added to the GSA schedule as a subcontractor to CMCI and CMCI therefore did not offer a viable option on the schedule.  Plaintiff was added to

because an RFQ could not have been successfully issued in compliance with the regulations. According to plaintiff, the agency would have been unable to justify use of a sole source award under FAR 8.405-6, and would therefore have had to utilize the original RFP, for which plaintiff had submitted a bid.

Plaintiff cites the Federal Circuit's treatment of plaintiffs in *Distributed Solutions, Inc. v. United States*, as an example of a more generous view of standing in the context of a procurement. 539 F.3d 1340 (Fed. Cir. 2008). In *Distributed Solutions*, plaintiff contractors challenged the government's decision to task a single contractor with the responsibility of awarding subcontracts under the contract, in effect circumventing federal procurement laws. *Id.* The Federal Circuit determined that plaintiffs were interested parties pursuant to 28 U.S.C. § 1491(b)(1) because they were prospective bidders with a direct economic interest in the proposed procurement, as opposed to "mere 'disappointed subcontractors' without standing." *Id*. at 1344-45. Plaintiffs had submitted qualifying proposals in response to the agency's Request for Information ("RFI") and were prepared to submit bids upon the issuance of an RFQ or an RFP. The Federal Circuit concluded that plaintiffs had standing and were denied the opportunity to compete when the government decided, after issuing the RFI, to "forego the direct competitive process of procurement," which, the court reiterated, begins with the process for determining a need for property or services (such as an RFI). *Id*. at 1345 (citing 41 U.S.C. § 403(2)).

The facts in *Distributed Solutions* are materially different from the facts of this case, however. Plaintiffs in *Distributed Solutions* sought the opportunity to respond to an RFQ or RFP in order to submit qualifying bids on their own behalf. The error in that procurement was cutting off the rights of qualified potential bidders. Unlike the complainants in *Distributed Solutions,* Klinge could not submit a qualifying proposal on its own behalf, and the agency's implementation of the RFQ process did not limit competition or exclude contractors.

This means that plaintiff's primary contention– that the way the agency went about the procurement violated applicable regulations– would appear to be outside the scope of plaintiff's standing. Only a vendor capable of responding to the RFQ could complain that the applicable regulations were

the GSA schedule as CMCI's subcontractor two days later, on March 12, 2009.

misapplied.  The alleged misapplication here was the failure to document a justification in accordance with FAR 8.405-6 to forego the survey requirements of FAR 8.405-1(c)(1).  Here, the presumptive beneficiaries would be vendors prequalified for the FSS RFQ.  That would leave plaintiff out.

Nevertheless, during oral argument, plaintiff clarified its argument that it has standing to argue illegality despite not being on the FSS.  If plaintiff is correct in its view of FAR 8.405-1(c)(1), then the agency would have had to make a justification under FAR 8.405-6 to use limited sources.  Plaintiff suggests that the agency would have been unable to meet the requirements of FAR 8.405-6, and thus it would be forced back into the use of the RFP, for which plaintiff would be qualified to compete.

It is unnecessary to resolve which of the parties' interpretations of FAR 8.405-1(c)(1) is correct.  Even if we agreed with plaintiff, we would decline to follow it into the thicket of FAR 8.405-6.  In order to establish prejudice, plaintiff would have to eliminate a series of possible rationales made available to the agency there:  that only one source is capable of responding due to the unique or specialized nature of the work; that the new work is a logical follow-on to a prior procurement; or that an urgent and compelling need exists.  *See* FAR 8.405-6(b).  The current state of the record does not permit an examination of these issues, nor should it.  They are far too attenuated.  The court would be drawn into collateral questions which would require extensive factual inquiry and which would ultimately be impossible to answer with any certainty.  In short, we limit plaintiff's standing to the argument that the agency chose to use an RFQ instead of an RFP simply as a pretext, either to avoid giving the contract to Klinge or to funnel the work to Sea Box.  Plaintiff does not have standing to challenge the validity of the RFQ in any other context.

There is an additional reason for our conclusion.  During the second protest, the issue that features so prominently here– the alleged violation of FAR 8.405(c)(1)– was not raised.  It is no answer for plaintiff to respond that it did not know that AAR should not have been counted toward the minimum number of potential vendors.  The court was informed at the time that, although CMCI had not been qualified to offer an LFRS on its schedule, that was about to change.  It was anticipated that CMCI would succeed in supplementing its schedule with Klinge's equipment. Plaintiff apparently was willing to take a chance on getting part of the work as a subcontractor.  In

other words, plaintiff had every reason to know at that time that CMCI, the other vendor relied on by Mr. Gallagher to offer a "viable solution," was in fact not capable of offering an LFRS. In short, plaintiff had the opportunity prior to *Klinge II* to raise this same argument. We consider it waived.

### B. Was the Procurement Pretextual?

We will assume, arguendo, that plaintiff is correct in its assertion that the agency did not comply with applicable procurement regulations in the current RFQ. The narrow question remains, then, whether this alleged non-compliance establishes pretext. We do not believe it does. In *Klinge II*, we set out what we viewed to be the relevant inquiry:

> We agree that something short of bad faith can be sufficient to call into question the cancellation of a procurement, *see, e.g.*, *Shields Enterprises, Inc. v. United States*, 28 Fed. Cl. 615, 624-25 (considering whether the cancellation lacked a reasonable basis); *Coastal Corp. v. United States*, 6 Cl. Ct. 337, 343-44 (1984) (applying arbitrary, capricious, not in accordance with law standard), although it is our observation that the cases actually granting relief appear to involve the exercise of bad faith. And in this case it is clear that the decision not to pursue an award with Klinge cannot have been reasonable. It was predicated on a mistake of both law and fact, namely that Klinge's explanation of its compliance with the TAA was a modification and not a clarification of its proposal.

> The mistake was also, more likely than not, prejudicial. The CO makes plain that, because he assumed Klinge was not eligible for award, proceeding with the RFP would have meant inviting a new round of modifications from all bidders. In that scenario, resorting to a FSS task order makes sense. The real question is whether the appropriate remedy is to enjoin the FSS task order award. As we explain above, there is no reason to think that integrity of the second procurement is undermined by the mistaken "cancellation" of the first. We believe the mistake, although probably prejudicial, was understandable and innocent.

10

These circumstances do not warrant the extraordinary[5] relief of enjoining an otherwise unimpeached procurement.

*Klinge II*, 83 Fed. Cl. at 779-80.

The basic facts surrounding the use of the RFQ in the current procurement were available to the court at the time of *Klinge II*. What plaintiff currently asserts as new evidence is that Mr. Gallagher's assumption that three vendors were capable of offering an LFRS was, in fact, wrong because AAR did not offer an LFRS on the schedule.

As stated in *Klinge II* above, however, pretext or bad faith involves more than mere error. The agency apparently believed it did not have to find three vendors actually capable of supplying a completely integrated LFRS. There is no reason to conclude, therefore, that even if the agency knew only one or two vendors could respond to the RFQ, it was acting against Klinge on pretextual grounds or that it was attempting to favor Sea Box.

We take at face value Mr. Gallagher's and Mr. McGinn's statements that AAR, CMCI and Sea Box were capable of offering a "viable solution" on the FSS. At the time Mr. Gallagher's notes from his site visits were compiled in 2007, there would have been no reason to fabricate a rationale for avoiding an award to Klinge. We also take at face value Mr. Gallagher's statement that the GSA e-Buy online notice was used as a way to expand, rather than to limit, interest in the solicitation. That would not have happened if the RFQ was orchestrated to funnel work to Sea Box. Even if AAR should not have been listed as capable of responding to an RFQ, we conclude that there is insufficient evidence of bad faith or that the integrity of the procurement process was impaired to warrant the extraordinary remedy of enjoining the procurement. As plaintiff lacks standing to request the court's reconsideration of the current procurement on any other ground, plaintiff's motion is denied.

## II. *Defendant's Motion for Reconsideration*

Defendant's motion for reconsideration is premised on an alleged error of law in granting plaintiff both injunctive relief and bid preparation costs relating to *Klinge I*. Defendant contends that "[a] successful plaintiff in a bid

---

[5]  *Baird Corp v. United States*, 1 Cl. Ct. 662, 664 (1983).

protest may receive its bid and proposal preparation costs or injunctive relief, but not both." Def.'s Mot. for Recons. at 3. Defendant is concerned that plaintiff "will have obtained a double-recovery in that it will receive both monetary relief and the opportunity to have its proposal considered as a sub-contractor to CMCI" if we award it bid preparation costs in conjunction with the RFP. *Id.* at 2. In the alternative, defendant seeks a clarification by the court that our September 12, 2008, award of bid preparation costs to plaintiff are in relation to costs incurred for *Klinge II* and not *Klinge I*.

At the outset, we can clarify that our intent in *Klinge II* was, indeed, to award bid preparation costs flowing from plaintiff's participation in the RFP process, the subject of *Klinge I*. In addition, we note that the relevant statutory language– "[t]he courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs," 28 U.S.C. § 1491(b)(2)– does not explicitly limit a protestor to either injunctive or monetary relief.

Defendant relies on *Beta Analytics Int'l, Inc. v. United States*, 75 Fed. Cl. 155 (2007), to support its position. In *Beta Analytics*, the plaintiff corporation sought bid preparation and proposal costs in a post-award bid protest action after the court had determined that defendant acted arbitrarily and capriciously in awarding a contract to the intervenor. 75 Fed. Cl. at 155. The court determined that plaintiff was entitled to almost all bid preparation and proposal costs sought but then considered whether an award of bid preparation and proposal costs could be obviated in a post-award bid protest context by the availability of injunctive relief. *See id.* at 159. The court noted that "[e]ven in a post-award context, injunctive relief may often be crafted to provide for the reevaluation of submitted proposals," which it held would then "eliminate the basis for an award of bid preparation and proposal costs" as the victim of the arbitrary and capricious government action would be given a "substantial chance to receive the award." *Id.* (internal citations omitted).

This analysis is not inconsistent with our grant of bid preparation costs here. Although we granted injunctive relief in *Klinge I*, by the time of *Klinge II*, it was plain that defendant had made the injunctive relief irrelevant, at least insofar as plaintiff's real interests were concerned, namely, having a chance at award of a contract. Although we held that the agency had the legal right to use a different procurement vehicle, the effect on plaintiff was that it no longer had a chance at an award.

As plaintiff points out, recent decisions of this court make clear that injunctive and monetary relief are not mutually exclusive. In *CNA Corp. v. United States*, 83 Fed. Cl. 1 (2008), the court denied defendant's motion to strike plaintiff's application for bid preparation and proposal costs after it had previously granted plaintiff injunctive relief in a post-award bid protest. The court analyzed the relevant statutes and concluded that:

> . . . this court has discretion to fashion awards that include a mixture of injunctive relief and bid preparation and proposal costs. The responsibility and discretion afforded to the court has been amended and broadened since this court's protest jurisdiction was defined earlier in the Tucker Act, 28 U.S.C. § 1491 (1994). The most sweeping changes came when Congress passed the Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L. No. 104-320, 110 Stat. 3870 (1996). The ADRA expanded the Tucker Act to provide the United States Court of Federal Claims and United States District Courts concurrent jurisdiction to hear bid protests, and it gave both courts discretion to fashion appropriate awards. 28 U.S.C. § 1491(b)(1)-(2) (2000). The ADRA stated: "To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." Pub. L. No. 104-320, §12(a), 110 Stat. 3870, 3974 . . . .

*Id.* at 10. *See also Alabama Aircraft Industries, Inc.- Birmingham v. United States,* 85 Fed. Cl. 558 (2009).

In short, we consider the award of bid preparation and proposal costs an appropriate remedy under the circumstances. We therefore deny defendant's motion for reconsideration and confirm the award of bid preparation costs.

CONCLUSION

For the reasons stated above, both parties' motions for reconsideration are denied.  The parties have previously stipulated that if bid preparation costs arising from the original procurement are properly awardable, they amount to $50,219.19.   Accordingly, the clerk is directed to enter judgment for bid preparation costs to plaintiff in the amount of $50,219.19.

 s/Eric G. Bruggink
ERIC G. BRUGGINK
Judge